## STATE v FAYLOR

Ohio Appeals, 2nd Dist., Franklin Co.

No. 3447. Decided May 26, 1942.

Ralph J. Bartlett, Pros. Atty., Columbus, for plaintiff-appellee.
John M. Scott, for defendant-appellant.

## OPINION

By GEIGER, PJ.

This matter is before this Court on an appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio, finding the defendant guilty on a charge of house-breaking with the intent to unlawfully steal, take and carry away the personal property of Harold M. Jones in said dwelling house then and there being found.

The testimony in this case is embodied in a bill of exceptions.

One Robert Jones, a boy of 16 years of age, testifies that upon the day in question he returned from an errand, upon which his mother had sent him, to his home in Columbus, Ohio, where his mother at the time was sitting on the front porch. The boy, looking through the adjacent room which seems to have been small, discovered a man standing near a sink. He thereupon entered the room and the man disappeared through a screen door. In less than one minute after making the original discovery of the man, the boy reached the back porch and there discovered a man in the back lawn of an adjacent apartment, separated from the Jones' property by a fence without a gate. The boy then accosted the man and asked him "What was

you doing in our house?" The man replied, "I wasn't in your house" and the boy said "Oh, yes you were" and· the man said, "No, I heard your screen door slam and a guy went around the other side of your house". The boy said, "Well if it wasn't you he was dressed just like you".

The boy then describes the attire of the man, which was not particularly distinctive, being summer trousers without coat. Upon being accosted by the boy, the man volunteered to help the boy find the person the defendant claimed went out the screen door, and they went around the entire square presumably looking for the culprit who had escaped. The defendant when he arrived at his automobile, which was parked some distance from the house, got in and drove away. Information was given to the Police Department as to the license number and the defendant was later arrested and search of his home made. Nothing of a criminal nature was found except the police testified they found a bundle of small wires about six inches in length and further, that upon search of the man, they found a small wire in his pocket similar to the wires found in his room. The police officers also testified that the mesh of the screen on the back door indicated that something had been inserted between the wires so small as not to spread the mesh, but simply to abrade the paint from the wire. The wire was exhibited to the Court trying the case without the intervention of a jury, but was not made an exhibit· in the case. The defendant stated that the wire was not much thicker than a hair.

This practically covers the evidence as to the offense and the identity of the man that was discovered in the house by the boy and who the boy claims passed out through the screen door. The boy has no doubt about the identity of the individual. Had no further evidence been introduced, we would have hesitated to sustain the judgment of the Court on the ground that the evidence was not sufficient to establish the guilt of the defendant beyond a reasonable doubt.

. There is no doubt that somebody was in the kitchen, but the doubt remains as to whether or not it was the individual who was almost immediately discovered in the adjacent lot. However, the defendant went upon the stand, which was an unfortunate proceeding upon his part as the first thing ·he said in answer to his counsel's questioning, was to state he had been in Florida where he had been arrested for housebreaking and sentenced to the chain gang for 25 years. He tells in a modest way how he escaped from the chain gang by stealing a truck belonging to the Road Supervisor and making a temporary escape, but he was afterwards captured and further sentenced. Upon further inquiry as to his past record, he testified that he had served a term in the State Reformatory at Mansfield for burglary, that service being in 1920. He did not remember for what he had been sent, stating that he was very young at the time, but upon being informed that the record showed burglary he acquiesced in that.

In 1916 he was sentenced to the Boys Industrial School at Lancaster for burglary, being released in November, 1917, and on the 11th day of January, 1918, he was arrested again for burglary and again sentenced to the Boys Industrial School on the 28th day of November, 1918, serving in all three terms in the Boys Industrial School and one term in the Reformatory.

On leaving Columbus in 1924 he went to Tampa, Florida where he was arrested on the 20th of January, 1926 charged with larceny and convicted in July of breaking and entering and grand larceny and received a sentence of five years and when confined on that charge, he stole the truck to escape from the chain gang and was charged with automobile stealing and sentenced for one year after the expiration of the sentence he was serving. The record does not disclose why he did not serve longer in Florida, than he did.

It is quite evident he did not serve the 25 year sentence.

He gave a rather fanciful account of the reason he was in the next door yard talking to a lady, stating that he had had a misunderstanding with his regular girl and that he had made the acquaintance of a new lady friend, but did not know her exact location. His account is not impressive and we do not wonder that the Judge trying the case showed some impatience in the questions he propounded to him.

While we would like to keep this young man out of the penitentiary if he could be used for productive war work, yet we see no justification in reversing the judgment of the court below. His continued criminal record justifies the court in disbelieving his testimony.

There is one matter, however, that seems to require our serious attention. On November 14, 1941, after being found guilty by the court sitting as a jury, it was stated in the entry that it is the sentence of the court that defendant, Robert E. Faylor, be imprisoned in the Ohio Penitentiary and kept at hard labor, but without solitary confinement and that he stands committed until discharged according to law. "Thereupon the Court ordered that the defendant serve one year more for perjury on the witness stand." It seems to us the court exhausted its jurisdiction when he gave him a sentence of five years.

We know of no occasion upon which we have been required or permitted to impose a sentence to the penitentiary upon a defendant who evidently was committing perjury while testifying on his own behalf. There is no charge of perjury nor of contempt of court. As to this matter, the judgment is modified.

Counsel for defendant elaborates upon the claim that there was no showing of an intent to steal and that that was one of the necessary elements of the offense charged. Counsel is quite right in his claim that the court or jury must find that there was an intent to steal in order to support the verdict. However, it is not necessary to prove by direct proof the existence of intent but the intent may be proven by either direct or circumstantial evidence. If the man had gone innocently into the house of a friendly neighbor for the purpose of drawing a drink of water at the sink, then he should not be convicted of breaking with intent to steal, but that is not the case here. He was discovered in the kitchen and made a hasty exit and afterwards a denial of his being in that room and the Court, sitting as a jury, had a right to infer from the circumstances proved, that he had intent to steal. It is true that there was not much promise in a small kitchen of getting anything of real value. He may merely have been searching for food. That, how-

ever, is a matter to be considered by the trial court.

Judgment affirmed.

BARNES & HORNBECK, JJ, concur.